## CARROLL *v.* CARROLL.

### Opinion delivered October 11, 1909.

1. LIMITATION OF ACTIONS—MONEY HAD AND RECEIVED.—Where a mother died, leaving a homestead, a husband and minor children, a suit by the children to hold the surviving husband liable for rents of the homestead during their minority is barred unless brought by them within three years after reaching their majority. (Page 627).

2. INFANCY—ESTOPPEL.—Where a minor, who was one of the plaintiffs in a suit, petitioned that the suit be dismissed as to him, and his petition was not withdrawn after reaching his majority, but remained in the record for nearly two years thereafter and until final decree was rendered, he will be held to have abandoned the suit and cannot complain of the decree dismissing it. (Page 627).

Appeal from Logan Chancery Court; *J. Virgil Bourland,* Chancellor; affirmed.

*Robert J. White,* for appellants.

*Anthony Hall,* for appellee.

HART, J. On December 20, 1905, Jerry Carroll, instituted an action in unlawful detainer against his son, J. D. Carroll, in the Logan Circuit Court for the Northern District to recover possession of certain lots in the town of Paris, Logan County, Arkansas.

On the 23d day of December, 1905, J. D. Carroll, Walter L. Carroll, a minor, by his next friend, J. D. Carroll, and May Davis, born Carroll, instituted an action in equity against Jerry Carroll, their father, and Sue Misner, born Carroll, in Logan Chancery Court for the Northern District. The complaint alleges in substance that the plaintiffs and the defendant, Sue Misner, are the children and heirs at law of Mrs. Mollie Car-

roll, who died intestate in Logan County, Arkansas, on the 8th day of July, 1887. That at the date of her death Mrs. Mollie Carroll was the wife of the defendant Jerry Carroll, and was the owner of certain lots in the town of Paris, Logan County, Arkansas, which comprised her homestead. That she had about $1,600 in cash and a mortgage on certain real estate situated in said Logan County executed in her favor by Charles Wood for several hundred dollars. That the defendant Jerry Carroll took possession of this personal property and also of the homestead. They ask that the defendant Jerry Carroll be required to account to them for the money that came into his hands at the death of their mother; to account for the Wood mortgage and for the rents of the homestead. They state that Sue Misner is made a party defendant in order that her rights may be preserved.

On January 4, 1906, J. D. Carroll filed his answer to the unlawful detainer suit, denying the rental contract and claiming title in himself and the other heirs. He also filed a separate answer and petition as next friend of Walter Carroll, asking that he be made a party defendant, setting up substantially the same allegations as those in his complaint in the chancery suit, and in addition that said J. D. Carroll was holding possession of the homestead under petitioner Walter Carroll, and not under said Jerry Carroll.

By consent the unlawful detainer suit was transferred to equity and consolidated with the chancery suit.

At the February term, 1906, of the chancery court, Jerry Carroll filed his answer, in which he denied all the allegations of the complaint, except that he admitted that the title to the homestead was in his wife at the date of her death, but averred that his right to curtesy therein was paramount to the homestead interest of his children. He pleaded the three-year statute of limitations against the plaintiffs, J. D. Carroll and May Davis.

Sue Misner filed an answer disclaiming any interest, and asked that it be dismissed as to her.

At the February term, 1906, of said chancery court, Walter Carroll filed a petition, in which he stated that he signed an instrument authorizing the suit against his father, Jerry Carroll, without understanding its purport, and stated that he did not

the statute of limitations against them, and his plea must be sustained.

Of course, it is well settled in this State that the statute of limitations does not affect the rights of the *cestuis que trust,* so long as the trust relation continues, but in this case the father was not their trustee in collecting rents from the homestead, and the statute of limitations began to run when they reached the age of 21 years, and barred so much of their cause of action as asked for an accounting of the rents collected from the homestead. Walter Carroll was born November 1, 1885, and the decree in this case was entered on September 30, 1908, at which time he only lacked two months of being 23 years of age.

He had during the period of his minority filed his petition asking that the suit against his father be dismissed. This petition was not withdrawn after he became of age, but remained as a part of the record for nearly 2 years thereafter, and until the final decree was rendered. After filing his petition to dismiss the action, he took no further part in the prosecution of the suit. After reaching the age of 21, he had the legal right to have his cause of action dismissed. He exercised that right by abandoning the prosecution of it, and is now in no attitude to complain of the decree of the court.

Appellants adduced evidence tending to show that, while Jerry Carroll and Mollie Carroll lived in Texas, she had inherited some money. That afterwards they removed to Arkansas, and that her money was used in conducting a business at Paris, Arkansas, where they resided from 1880 to the date of her death in 1887. That the money and mortgage in controversy was the proceeds of that business.

The appellant J. D. Carroll testified substantially that these facts were admitted to him by his father immediately after his mother's death, and that his father told him that the money would be invested for the benefit of his children, who were then minors. On account of his confidence in his father, he states that no attempt was made to collect from him this money until the year 1904.

Jerry Carroll testified in his own behalf. He admitted that his deceased wife received $500 from her brother and guardian while they lived in Texas, but says that, on account of misfortune overtaking them, they spent this for medical bills and other

intend to authorize the bringing of suit in his name. His petition further states that he has no knowledge of his own as to what property his mother owned at her death, but does not believe that his mother was the owner of the money and mortgage which was the foundation of the chancery action. He states that he believes that his father's claim of ownership thereof is true, and asks that the suit be dismissed, in so far as he is concerned.

The case was heard before the chancellor upon the pleadings and depositions filed in the cause. The chancellor found that the town lots which comprised the homestead, though purchased by Jerry Carroll with his own means, were intended as a gift to his wife, Mollie Carroll, and that the legal title to the same was vested in her by deed from the grantor; and that the legal effect of which was to devolve by descent the reversionary interest in the said children, dependent upon and postponed by the estate by curtesy of her husband, the defendant Jerry Carroll. The chancellor further found that Mollie Carroll, deceased, was not the owner of the money or mortgage debt, which is a part of the subject-matter of this litigation. That J. D. Carroll occupied the homestead under a rental contract from the defendant, Jerry Carroll, and there was due and unpaid thereon the sum of $240. A decree was therefore entered in favor of the defendant, Jerry Carroll; and the case is here on appeal.

It is insisted that the homestead of the mother descended to the minor children under the Constitution of 1874 for the reason that the acquisition of the land and the death of the mother occurred after the Constitution of 1874 was adopted, and that their father's right to curtesy must yield to their superior right of homestead. Conceding this to be true, it does not help them. The appellants, J. D. Carroll and May Davis, were born respectively on November 19, 1874, and May 25, 1879. They commenced this suit on the 23d day of December, 1905, and at that time were aged respectively 31 and 26 years. Hence they do not contend that they were entitled to the possession of the homestead, but do insist that their father should account to them for the rents thereof during the period of their minority after the death of their mother. But their father has pleaded

family expenses; that soon after they came to Arkansas the last of it was spent; that in June, 1871, he went to work for a railroad company as lineman, and by the time they moved to Paris in 1880 he had accumulated between $1,200 and $1,300 as a result of the savings from his labor; that he purchased the homestead for $500, and had the title taken in the name of his wife for the protection of herself and their children; that he went into business with the remainder; that the business prospered, and the money and mortgage in controversy were the proceeds of that business; that he was for the most part a hardworking and careful business man, but would sometimes get on a spree, which would last 2 or 3 days, and on this account made his wife the custodian of his money. For the same reason he said that the Wood mortgage was taken in her name, but there was no intention that it should be her separate property, but it was understood that it was to remain his property; that, when she realized that she was soon to die, his wife returned to him the money and the Wood mortgage.

Other testimony was adduced by both parties to corroborate their respective contentions, but it is not necessary to state it in detail.

The chancellor found the issues in this respect in favor of appellee Jerry Carroll, and a careful consideration of the testimony leads us to believe that his finding was correct. It seems to us that Jerry Carroll made a plain and reasonable statement of how he acquired the property in controversy, and of the struggles made in acquiring it. The only substantial contradiction to it is his admissions to the contrary, as testified to by his son, J. D. Carroll. These admissions are denied by Jerry Carroll, and his denial is corroborated by other circumstances adduced in evidence.

The evidence also shows that in June, 1905, J. D. Carroll rented the homestead from the agent of Jerry Carroll, and agreed to pay as rent therefor the sum of $6 per month. The rent amounted in the aggregate to the sum of $240, for which amount judgment was correctly rendered against J. D. Carroll in favor of Jerry Carroll.

We find no prejudicial error in the record, and the decree is therefore affirmed.